Zannikos v. Oil Inspections When this action was filed, it was filed by Zannikos individually and on behalf of others similarly situated, and subsequent to that the two, if I'm pronouncing it correctly, Cormiers entered. Is the period closed for anyone else that can enter on this? Yes. So we've got a total of three, no more, no less. Correct. But this is still an extraordinarily important case to my client because this is probably going to inform the decisions that it makes with respect to compensating its other employees who are still employed. The one last point I'd like to make in response to, I think, Judge Higginson's observation, and I think it goes to your point as well, Judge Barksdale, the regulation at 541.203C gives examples of people that are ordinarily exercising discretion. And an employee who leads a team of other employees to complete major assignments, major projects for the employer, dot, dot, dot, generally meets the duties requirement, even if the employee does not have direct supervisory responsibility over the other employees. I see my time has expired. May I finish briefly? That's this situation. The Marine superintendent is out there with authority over all the players that are involved in the process, on the ship, on the terminal, independent inspectors that show up. Thank you. May it please the court. My name is Beatrice Sosa-Morris, and I represent the cross-appellant, the Marine expeditors, all three of them, Zanikos, and the Cormiers. And the issue before this court is whether the district court was correct in finding that Marine expeditors who, one, inspect the inspectors, two, fill out pre-printed checklists, and three, notify the parties that if the cargo operation is not going in accordance to industry regulations and the appellant's customer specifications, does that rise to the level of using independent judgment or discretion? And the district court said it did not, and it is correct. Here, what is missing is an evaluation of multiple courses of conduct and acting or making a decision after various possibilities have been considered. Support that this is the case that the Marine expeditors are simply inspecting the inspectors is in the record by way of the Taylor's deposition, number one, where he testifies that the manuals and the guidelines provided by oil inspections will prepare the expeditor for any single type of decision that they have to make out in the field. Number two is John Leach's letter describing the job of the Marine expeditors. He states that the duties consist of observations of strict safety compliance and procedures as laid down by the American Petroleum Institute and the American Society for Testing and Materials. And number three is if you just look at the evidence presented, it is clear that there is no determination or evaluation of multiple courses of conduct. The issue is whether something complies or does not comply. The temperature was either gauged correctly or it was not gauged correctly. And if it was not gauged correctly, opposing counsel is incorrect in saying that Zanikas or the other expeditors had authority over anybody else who was responsible for transporting the cargo. In fact, when specifically asked, you have no authority over the independent inspector in the record 2754 to 2755, he said no, that is correct. There's no authority by the expeditor over the mutual inspector. In fact, if the mutual inspector makes a report that conflicts with Zanikas, the mutual inspector report is the one that is used for dealings with how much the oil will cost one company and the other. So with that in mind, I also want to take a look at the job duties. For example, the critical zone. The appellant cite to, well, the critical zone, you have the ability to exercise independent judgment of discretion. And the critical zone is merely the gap between the crude oil and the top of the tank. And it's either 12 inches per the customer specification or it's not. There is no, Mr. Zanikas and the other expeditors don't have any authority to change it. They simply notify their office who then notifies the client to let them know of the discrepancy. With regards to cleaning, cleaning of tanks, Mr. Zanikas testified that cleaning is heavily regulated by MARPOL requirements. But if in each of these vast decisions, clean the whole tank again, refill it, wash it, double check it, I guess their argument is those decisions are sufficiently complex that inherently it involves independent discretion on the spot. It sounds like it does. But in fact, it's strictly controlled by MARPOL requirements. When you look at tank cleaning, you have to look at the last three cargos and you either, to see if what. Part of the problem, I mean, I don't mean to interrupt, but I will interrupt just because it seems that way it's strictly controlled. But then we are controlled by Cheatham, correct? That's a published decision. And then Bondi. In both cases, our court said, well, Dallas may have convention center rules, but that doesn't make the person lacking discretion. All state may have checklists for its insurance adjusters, but that doesn't remove their discretion. So the existence of rules you have to conform to, we've now twice said, isn't the controlling factor. That's exactly right. But what is missing in this case that was in the other cases is the subjective component of deciding what standard to follow. For example, in Bondi, not only did the party planner have control to establish policies over the convention center, she dealt with and negotiated with clients on setting prices, negotiated with vendors. That sounds like an appropriate rule, but did we ever use that expression? Did we ever mention subjective in either of those decisions? I don't recall. I mean, it makes sense of them and it favors your outcome. It is in other case law that I have encountered and briefed, but I can't think of it off. It is in the briefs, though, that the subjective component, as opposed to a binary decision on whether X is complied or it's not. And there's no room for you to evaluate several courses of conduct, like the regulations specifically say, and come up with an action or a determination after evaluating multiple courses of conduct. There's no subjective component. And, again, with the Allstate case in Cheatham, that case, likewise, the insurance adjuster negotiated with interviewed fact witnesses. So there's a subjective component and had negotiation ability in typical insurance cases, which is absent from this case. And going back to the cleaning, with regards to how to wash, again, that's controlled by MARPL requirements, but the type of wash is also controlled by the MARPL requirements. The type of wash and whether it will be washed or not, those are strictly regulated. With stripping, which is taking the oil out of the tank, there's only one way to do it, and that's with cargo adductors, and that's in the record on 2786. With regards to the temperature, the appellants use as an example, if an inspector simply dips it in three inches, takes it right out, and that's incorrect, right? You use your independent judgment or discretion to say that is not the correct way. And the defendants or the appellants simply cannot meet their burden by asking the regulations to a lay witness like Sinico's and say, are you using independent judgment or discretion with regards to matters of significance? Yes. Okay. Then I've met my burden. Is your argument inconsistent with O'Dell? No. O'Dell, I do want to get to O'Dell and Fox. Those are two cases that the appellants will have this court rely on. With O'Dell, it was overturned by Bothell. The court did not rely on the DOL regulations, which state specifically that O'Dell did not disregard the DOL regulations regarding inspectors. And so the subsequent court said that is incorrect. You have to give deference to the DOL regulations. And in O'Dell, the inspector had authority to override the mutual inspector, which that authority is missing from this fact pattern. There's no authority over the independent inspector or the captain of the ship or the chief officer, which is the person responsible for the cargo operations of the vessel. And also, both O'Dell and Fox are before the change of the regulation, which says that the independent judgment or discretion must be with regards to matters of significance. You will not find in any of those opinions matters of significance because the regulation did not exist. So if any choice was being made, any discretion per the court in those two cases, it would not have been with regards to matters of significance. Fox is a case from 1955. Again, doesn't mention independent judgment or discretion with regards to matters of significance. It's based on a definition of district gaugers, which is no longer in existence. And even looking at that regulation of district gaugers, the old one, you will see that it says that some of these names are honorific. You have to look at the specific facts and specific job duties. It's very fine line drawing. Inspectors, not exempt. Event planners, yes, exempt. And we're getting into pretty microscopic lines of distinction between do you have enough independent judgment or are you sufficiently constrained? Is there any other case that's relevant besides Bondi, Cheatham, O'Dell that really zeroes in on Marines? There's not a case. It's directly on point with regards to Marine expeditors, but there are cases, the Cotton case with regards to the construction supervisor, they called him. His company did flooring and outdoor patios, and his job was to make sure that the flooring was up to code. He contracted which subcontractor would do the job for the home service provider, for his employer, and he also fixed minor repairs at his discretion. The court said no tribal issue of fact? The court said no tribal issue of fact. The use of his skills in evaluating which procedures to be used does not rise to the level of independent judgment or discretion. He had authority to also make the builder rework a job up to $200 cost, and anything else above that was subject to review. Here the Marine expeditors are in constant communication with their supervisors, the oil inspections field officers, sorry, the oil inspections operating personnel, which are the ones that have the direct contact with the client. Simply looking at the facts, there's no free choice to use independent judgment or discretion. I believe appellants also cited to pumping, and the example they use with regards to pumping is, if you see that the pumping is being recorded incorrectly by someone on the vessel, do you have independent judgment or discretion to correct it? He would simply say the pumping is incorrect. And if it was not fixed, what did you do? Contact the office. So there's no example of evaluating multiple courses of conduct. I do want to discuss the email which the appellants brought up with regards to creating a plan on how to implement blending. Blending is the creation of a new petroleum product by putting multiple products together, such as ingredients, into making a new product. And it is highly regulated. Mr. Taylor testified that with regards to blending, they create a prototype plan created for blending. They have a proprietary system called a blending program, which data is inputted into the system, into the computer, and it creates a prototype plan. And this is a predetermined plan. There's no room to evaluate multiple courses of conduct. It's a mathematical calculation. You need a fourth of X and a fourth of Y and a half of D to make petroleum product B. It's a simple calculation. It's done by a computer. The information is inputted. Taylor testified, again, that it's a prototype plan. And so there's no discretion. Even with that seven-step plan, it was something that was already a prototype plan. But even if there is some discretion in this one example, Mr. Zuniga has worked for this company for 22 years. And at the time of this deposition, had worked for 24 years. And had worked in the field for 24 years. And throughout this entire time, they've only produced to this court, pointed out in the record to one e-mail, when you have to look at the totality of the circumstances to determine what is the primary duty. And although they allege, well, primary duty includes and emphasize on the includes, let's not forget that it still has to be the primary duty. And, again, primary duty, you have to look at the totality of the circumstances. I also want to note to some things that they've used as examples but never happened. For example, when asked, oh, when a blending error commenced and you realized there was an error, you'd stop it mid-transaction to try to get it corrected. Mr. Zuniga testified, yes, but I would. I would say that's incorrect. There's an error. But that never happened. And that's in the record at 2771, never stop mid-transaction. Also, objecting to a crude oil wash when it's unsuitable. They state, I believe even in their appellate brief, that Mr. Zuniga's had the independent judgment of discretion to stop a crude oil wash when it was unsuitable. And he said, well, if it was unsuitable, yes, I would say it's not unsuitable per the book, per MARPL requirements, but that never happened. And that's at 2785 to 2786. And also. Counsel, I know you have much more you could talk about. Your brief has covered a lot of this. I wish you would move to willfulness and your objection to the district court's ruling on willfulness. With regards to willfulness. Counsel, may I ask one question before we get to that to end up this discretion? In your brief at 19, your response brief, or we'll call it your red brief, you point out about six items that you state are being raised for the first time on appeal, including whether the employee represents the company. You cite a reg, BP procedures. Then you cite the testimony of Mr. Zuniga at four different portions of the record. And you're saying that those were not relied upon or those weren't in the summary judgment record? Those were not relied upon by defendants. But are they in the summary judgment record? They are in the record, but it's our position that the district court does not have a duty to search the record for facts that would support one position or the other. They would have to be pointed out to the court. And the appellant's cite to a John case, which states that where the respondent. I just wanted to make sure. I mean, you do have record citations. All right. Thank you. Yes. And this all goes to the discretionary? Correct. Thank you. And with regards to the job duties, the primary job duty, the Cole case written by Judge Rosenthal, Cole v. Woodland Fire Department, says you have to look at the day-to-day duties, not just general job descriptions, so not just things that never happened, such as telling the inspector to get proper calibrated equipment when he forgot it. That never happened, Mr. Zuniga said, never. Are you answering Judge Southwick's question now, or are you still? No. I'm going to move on. You ought to get over to his question. Yes. Thank you. And that's at 2790. But with regards to willfulness. I interrupted you before you were finished, so you were finishing, but. Thank you. That's all right. With regards to willfulness, I do want to point out to a regulation that the standard is intentional or reckless disregard. We do not disagree with that. But I do want to point to a regulation that defines recklessness, and that's 551.104. And it says reckless disregard of the requirements of the act means failure to make adequate inquiry into whether conduct is in compliance with the act. Failure to make an adequate inquiry, and that is what is missing in this case. Mr. Taylor, as I understand it, for about 17 years was a Marine expediter, wasn't he? That's correct, yes. And he's the CEO of Oil Inspectors? He is the president, and he is the one that made the decision to pay expediters on a salary basis, and it was found that he was a joint employer. I would disagree. There is evidence in the record to say that he hired and fired individuals or he took the recommendations. Is there anything in the record as to his saying deposition testimony? I never felt like I had discretion when I was a Marine expediter, and I did it for 17 years. So is CEO or president of Oil Inspectors? No, they don't meet the admin inspection. I didn't need to go beyond my own experience. He does state in the record that we use independent judgment or discretion. But when asked further, what do you mean? Well, we used independent judgment or discretion to determine whether something was correct or not. And correct, such as what, gauging? Yes, correct is in gauging, and there's the API. He even testifies that the American Petroleum Institute has heavy regulations regarding how to gauge. So that is his understanding of independent judgment or discretion. But with regards to the FLSA, his declaration states he didn't know about it. He never investigated into it. He simply paid Marine expediters because it was industry standard. That was his testimony. So there's a failure to inquire into the application of the FLSA, which makes this violation willful. A failure to investigate into what? The what? The FLSA, the Fair Labor Standards Act. Oh, FLSA. All right, thank you. That's right. According to Judge Gilmour, citing one of our opinions, I think, she said, simply failing to seek legal advice concerning a practice does not evidence a willful violation. Are you disagreeing with that law or disagreeing with her application of it here? I'm disagreeing with the application. I'm not disagreeing with the law, but I am disagreeing with the fact. In this case, Mr. Taylor made no inquiry whatsoever into the FLSA with regards to its application, testified he didn't even know about the FLSA, made no inquiry to see if he was paying them correctly. And that is a failure to inquire into the application of the FLSA is what is willful. How many employees, how many Marine expediters are employed by oil inspectors at the time of this discovery? About 12 to 15 expediters worked for oil inspections. And how many employees for oil inspectors? Is that it? No. There are also operators who communicate with the client, the intermediaries between the expediters and the customers of the appellant. I'm not sure how many of those or how many office staff they have. I guess it meets the minimum required for the regs, but a small number. It is. But they're all, Mr. Taylor testified that everybody is paid on a salary at oil inspections. I see that I am out of time. I see that you are. We have your brief. Thank you. Judge, if I might start with a question that was posed about Stephen Taylor's testimony. He testified at page 2525 of the record that Marine superintendents use their discretion to work out, problem solve the situation. And that, I think, goes to one of the questions that Judge Higginson was asking. Inspectors aren't exempt, but what do we have here? And what the regulation says is that ordinary inspection work, doesn't qualify for the exemption. What Marine superintendents are doing involves inspecting for compliance, but then stepping in to decide how to resolve problems or issues when things go off the tracks. That's just like bonding. That phrasing seems to me to be sort of maybe capturing the principle of contention. You used the word how, and it seems to me what the district judge found, what's being argued by opponents, there's no how to it. It's all preordained. And you do have this regulation that you're talking about, also says that inspectors normally perform specialized work along standardized lines involving well-established techniques and procedures. And so there is no how to it, is the argument, and what we'll have to decide. Other than that one email, what's the best you can give us that there is some how decision here? I can give several, and I'll start with Zanikos' testimony about blending, because he says you can go in two ways with this. 2770 of the record, if he observes a blending error, he, quote, gets to make the decision as the client's representative to either do nothing or go straight to the chief officer and urge that the problem be corrected immediately. Well, why would he do nothing? He says at 2782 of the record, if the error is good for my customer, I keep quiet. They are there to represent the customer's interest and to make decisions that further the customer's interest. Cormier's resume, he talks about making appropriate recommendations after reviewing the chief officer's discharge and loading plans. That gets to the email where the review by Zanikos of the blending plan, the loading plan of the ship, leads to a seven-step, not formulaic, not plugging it into a computer program, but when you look at the document, you will see he's talking about in what order are we going to pump what oil into which tanks and which hoses are we going to connect in what order to which tanks and from where in order to achieve the customer's requirements. We see this at pages 8, 19, and 20 of the record where Zanikos says that if he does see a blending problem because it's so extraordinary or it can be if he's representing one party who needs to have it blended a certain way, he has authority to go intervene immediately with the ship. The record's voluminous, and it seems like you both have superbly engaged. So what's your best? Do you suggest that the court below erred in its understanding of the law or just misperceived these little points of discretion? I think the trial court failed to view the totality of the record in the light most favorable to oil inspections. It's not an error of law. We knew the law. No, I think it's both. I think it's an error of law to not view the record in the light most favorable to us, but then it's a misapplication of the law to the facts that are presented in this record. It seems to me there are two reasonable outcomes here. One is that oil inspections is entitled to summary judgment. The other is that there is at least a triable issue of material fact on the third prong. It's not that the record is undisputed here. The parties have competing stories to tell, as you know. The plaintiffs see it one way. We have offered a lot of facts, and I'm happy to talk about some more examples of discretion with the little time I have left. When the independent inspector showed up without or would show up without properly calibrated equipment, which Zanico says is his responsibility, Zanico says it was his judgment call about what to do, send him back to go get his equipment or let him use equipment on the ship. He testified that he would ordinarily elect to use the equipment on the ship unless it was a very specialized cargo like jet fuel, in which case he would make a judgment call the other way and say, independent inspector, go get your properly calibrated equipment. That's an exercise of discretion. It's weighing choices and deciding which way to go, and he's doing it there as the representative of the client that needs somebody there to make sure that their interests are protected at all times. Thank you. Right on time. Thanks to you both.